UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEER VALLEY TRUCKING INC., an Idaho corporation<br><br>　　　　　　　　Plaintiff,<br>　v.<br><br>LEASE ONE CORPORATION, a Massachusetts corporation; JOESHP L. ANGELO; RICK LOPEZ; FIRST FINANCIAL BROKERAGE, INC., a New Jersey corporation; and ROBERT SEARCY,<br><br>　　　　　　　　Defendants. | Case No. 4:12-cv-00604-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

### INTRODUCTION

The question before the Court is whether to transfer this case to the United States District Court for the District of Massachusetts. Because a transfer would do little, if anything, to lessen the costs associated with this litigation or serve "the interest of justice," 28 U.S.C. 1404(a), the Court will not upset Plaintiff's choice of forums.

# BACKGROUND[1]

Plaintiff Deer Valley Trucking Inc. is an Idaho corporation headquartered in Idaho Falls.  Deer Valley provides trucking and transportation services to oil companies.  In 2011, Deer Valley was contacted by Joe Mardisch, a Utah-based broker associated with Defendant Lease One Corporation.  Mardisch began negotiating with Deer Valley over the lease of 100 vacuum trailers, a specialized trailer used to transport oil.

After receiving Deer Valley's initial financial disclosures, Mardisch turned over negotiations to Lease One's president, Defendant Joesph Angelo, and vice president, defendant Rick Lopez, who worked in Lease One's headquarters in Lynnfield, Massachusetts.  Lease One proposed to provide the $5,384,000.00 Deer Valley needed to lease the vacuum trailers at a "promising interest rate."  *Complaint*,  ¶ 38, Dkt. 1-1.  In addition to monthly payments, Deer Valley was required to provide a nonrefundable down payment of $344,918.00.

The nonrefundable nature of the sizable down payment caused Deer Valley consternation.  To alleviate these concerns, Angelo and Lopez arranged for a conference call with Deer Valley and Defendant Robert Searcy, president of Defendant First Financial Brokerage, Inc., of New Jersey.  Angelo assured Deer Valley that the down payment was nonrefundable only in the event that Lease One provided the necessary financing and Deer Valley did not go through with the deal.  Searcy represented that First Financial stood ready and willing to provide the money for the lease once the documents

---

[1] Because the facts are largely undisputed at this point in the litigation, the Court accepts as true the facts alleged in the complaint for the purposes of deciding this motion.

were in order. With these assurances in hand, Deer Valley signed the lease agreement and wired the down payment to Lease One.

The lease agreement Deer Valley signed contains the following clause:

> LAW: This lease shall be deemed fully executed and performed in the State o[f] Massachusetts or in the home state of whoever holds the Lessor's interest as it may be assigned from time to time . . . . This lease shall be governed by and construed in accordance with the laws of the State of Massachusetts or the laws of the home state of Lessor's assignee. [Deer Valley] expressly and unconditionally consent[s] to the jurisdiction and venue of any court in the State of Massachusetts and waive[s] the right to trial by jury for any claim or action arising out of or relating to this Agreement or the Equipment. Furthermore, [Deer Valley] waive[s] the defense of Forum Non Conveniens.

*Lease Agreement*, dkt. 19-2, at 7.

Although the parties disagree as to why, Lease One did not provide the financing to Deer Valley that it promised. As a result, Deer Valley brought suit against Lease One, Angelo, Lopez, First Financial, and Searcy (collectively "Defendants") in Idaho state court. Deer Valley alleged causes of action for (1) racketeering, (2) common law fraud and misrepresentation, (3) breach of contract, (4) breach of the covenant of good faith and fair dealing, (5) unjust enrichment, (6) implied contract/quantum meruit, and (7) conversion. Defendants removed the action to this Court and now seek to have the matter transferred to the District of Massachusetts.

## DISCUSSION

All the parties agree that the District of Massachusetts is an available alternate venue for this litigation. As such, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or

division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).  Generally, "transfer under § 1404(a) should not be freely granted" because "there is a strong 'presumption in favor of [a] plaintiff's choice of forums."[2]  *Gherebi v. Bush*, 352 F.3d 1278, 1303 (9th Cir. 2003) (internal quotation marks omitted) *vacated on other grounds by Bush v. Gherebi*, 542 U.S. 952 (2004).  "[Defendants] must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice . . . ."  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

The Court's decision to transfer a case is based upon "considerations of convenience and fairness" in light of the circumstances of this particular case. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal quotation mark omitted).  In making this determination, the Court may consider several private and public factors:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

---

[2] Defendants contest whether this presumption is as strong in this case.  As will be discussed *infra*, the Court disagrees with that contention. *See Carijano v. Occidental Petroleum Corp*, 643 F.3d 1216, 1222 (9th Cir. 2011) (accepting as true the facts in the complaint in a *forum non conveniens* analysis).

*Id.* at 498-99; *see also Gherebi*, 352 F.3d at 1302-03.  Additionally, the presence of a nonexclusive forum selection clause and the "relevant public policy of the forum state, if any," are significant factors in the Court's analysis.  *Jones*, 211 F.3d at 499.

1.  *The Forum Selection & Governing Law Clause & Relevant Public Policy*

Much of Defendants' argument rests on the clause contained in the lease agreement entitled "LAW."  Because the clause states that (1) lease was "fully executed and performed in Massachusetts" and (2) "governed by and construed in accordance with the laws of the State of Massachusetts," Defendants' argue the first, second, third, and fifth factors all favor transferring this case to Massachusetts.

The sentence that governs the situs of the transaction is meant to tip the scales in a venue contest, as Defendants' reliance on it plainly shows.  As such, it is fairly characterized as a forum selection clause, and its presence ordinarily would weigh heavily toward a transfer.  However, its weight is significantly diminished in this case because Idaho has "expresse[d] a strong public policy against the enforcement of [forum] selection clauses."  *Cerami-Kote, Inc. v. Energywave Corp.*, 773 P.2d 1143, 1146 (Idaho 1989) (interpreting a predecessor to Idaho Code § 29-110); *see also Jones*, 211 F.3d at 499 (affirming the denial of a motion to transfer in part because of "California's strong public policy to provide a protective local forum for local franchisees.").

Moreover, the Court does not agree that the situs sentence and the governing law sentence in the "LAW" clause support transferring this case under the second and fifth factors.  With respect to the governing law, Defendants are correct that Massachusetts

law controls the contract dispute in this case pursuant to the terms of the lease. However, Deer Valley's contract claim is but one of seven causes of action alleged, and the success of the remaining claims is largely unrelated to the viability of the contract claim. *See generally Mannos v. Moss*, 155 P.3d 1166 (Idaho 2007) (discussing common law fraud, unjust enrichment, and racketeering); *Nanney v. Linella, Inc.*, 943 P.2d 67, 71 (Idaho Ct. App. 1997) (affirming summary judgment against a defendant on claims for breach of contract and conversion). Thus, Idaho law controls the bulk of Deer Valley's claims.

Nor does the Court agree that the actions underlying Deer Valley's claims occurred in Massachusetts, as Defendants argue. First, the situs sentence does little, if anything, to inform where Defendants made the alleged fraudulent statements underlying Deer Valley's racketeering and fraud claims. These claims rest on Defendants' statements made during the negotiations that allegedly induced Deer Valley to wire the down payment. It is ambiguous whether these inducements fall within the terms of the situs sentence.[3] Consequently, the Court concludes that they do not. *See Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 78 (9th Cir. 1987) ("Another fundamental rule of contract interpretation is that where language is ambiguous the court should construe the language against the drafter of the contract."). Furthermore, Deer Valley's claims are premised on Defendants' alleged failure to perform under the lease. The situs sentence is silent on that scenario.

---

[3] Webster's Third New International Dictionary defines "execute" as "to put into effect: carry out fully and completely." *Id.* at 794. Similarly, Black's Law Dictionary (9th ed.) defines "execution" as "Validation of a written instrument, such as a contract or will, by fulfilling the necessary legal requirements <delivery of the goods completed the contract's execution>."

Second, Deer Valley has the better argument that Idaho has the stronger ties to the events underlying Deer Valley's claims, even if the alleged misrepresentations did originate in Massachusetts or New Jersey. "Idaho has an ever-increasing interest in protecting its residents from fraud committed on them from afar . . . ." *Blimka v. My Web Wholesaler, LLC*, 152 P.3d 594, 599 (Idaho 2007). When a tortfeasor actively directs its fraudulent statements toward an Idaho victim, as Defendants are alleged to have done here, those acts place the tortfeasor in contact with Idaho. *Id.* at 598. Therefore, the Court concludes that Defendants' acts relating to Deer Valley's causes of action favor retaining venue in this district.

For the same reasons, the Court rejects Defendants' argument that Deer Valley's choice of forum should not be given much weight because "Idaho lacks significant contacts with the underlying causes of action." *Defs' Opposition* at 6, Dkt. 19-1. Thus, the third factor counsels against transferring this action.

2.  *The Balance of Hardships Between the Parties*

Defendants argue that Massachusetts provides the more economical and convenient forum for this litigation, primarily because the Defendants reside in Massachusetts or within driving distance. The fact that Defendants outnumber Deer Valley is an insufficient reason to transfer this case. *See Gherebi*, 352 F.3d at 1303 (stating that a transfer should be for the convenience of the parties, not simply one side of the "v."). Moreover, Mardisch is the only likely nonparty witness known to the Court at this time, and neither forum could compel his attendance at trial from his residence in

Utah.  *See* Fed. R. Civ. Pro. 45(b)(2).  At best, the transfer would only shift the burdens of litigation between the parties.  But, "[s]ection 1404(a) provides for transfer to a more convenient forum, 'not to a forum likely to prove equally convenient or inconvenient.'" *Gherebi*, 352 F.3d at 1303 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964)); *Decker Coal*, 805 F.3d at 843 (transfer should not "merely shift rather than eliminate the inconvenience").

## CONCLUSION

After balancing the relevant factors, the Court concludes that transferring this case to Massachusetts would achieve little, if anything, to reduce the costs or burdens associated with this litigation and that several important policy factors support retaining venue in this district.  Therefore, the Court denies Defendants' motion to transfer.

## ORDER

**IT IS ORDERED THAT** Defendant's Motion to Transfer Venue (Dkt.  19) is **DENIED**.

DATED: August 16, 2013

B. Lynn Winmill
Chief Judge
United States District Court