**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| DEER VALLEY TRUCKING INC., an Idaho corporation,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>LEASE ONE CORP., a Massachusetts corporation, JOSEPH L. ANGELO, RICK LOPEZ, FIRST FINANCIAL BROKERAGE, INC., a New Jersey corporation, and ROBERT SEARCY,<br><br>　　　　Defendants. | Case No. 4:12-cv-00604-BLW<br><br>MEMORANDUM DECISION AND ORDER |

　　Before the Court is Defendants Lease One Corp, Joseph L. Angelo and Rick Lopez's (collectively, "Lease One") Motion for Partial Summary Judgment (Dkt. 44) and Plaintiff Deer Valley Trucking Inc.'s Motion for Extension of Time to Complete Discovery Pursuant to F.R.C.P. 56(d) (Dkt. 48). The Court heard oral argument on October 21, 2014, and took the matter under advisement. For the reasons set forth below, the Court will grant the motion in part and deny in part. The Court will allow all of Deer Valley's

**MEMORANDUM DECISION AND ORDER - 1**

claims to survive except for the racketeering claim. With respect to the racketeering claim, the Court will deny Deer Valley's motion for extension of time to complete discovery and dismiss its racketeering claim.

## BACKGROUND

Plaintiff Deer Valley Trucking Inc. is an Idaho corporation headquartered in Idaho Falls. Deer Valley provides trucking and transportation services to oil companies. In late summer of 2011, Deer Valley sought commercial financing for the acquisition of 100 vacuum trailers, a specialized trailer used to transport oil. Deer Valley had ordered the 100 trailers from CT Fabrication, LLC and was searching for financing to cover the cost. *Chapman Aff.* ¶ 5, Dkt. 47-2.

Wade Chapman, Deer Valley's CEO, was provided information about Joe Mardesich, a Utah-based broker associated with Defendant Lease One Corporation, as a potential source of funding. Mardisch began negotiating with Deer Valley over the lease of the 100 vacuum trailers. *Id.* ¶ 8. After receiving Deer Valley's initial financial disclosures, Mardisch turned over negotiations to Lease One's president, Defendant Joseph Angelo, and vice president, Defendant Rick Lopez, who worked in Lease One's headquarters in Lynnfield, Massachusetts. *Id.* ¶ 9. Lease One proposed to provide the $5,384,000.00 Deer Valley needed to lease the vacuum trailers at a "promising interest rate." *Compl*, ¶ 38, Dkt. 1–1.

On November 3, 2011, Lopez sent an email to Chapman providing Deer Valley with lease documents for signing. The lease document, titled Equipment Lease

Agreement, identified Lease One as the lessor and owner of the equipment and provided for a 36-month lease of 100 trailers, at a lease rate of $159,958.00 per month, with an option to acquire the equipment at the conclusion of the term for 10% of the original purchase price. In addition to monthly payments, the Equipment Lease Agreement required Deer Valley to provide a nonrefundable down payment of $344,918.00. *Equipment Lease Agreement*, Dkt. 47-3 at 4.

The nonrefundable nature of the sizable down payment caused Deer Valley consternation. To alleviate these concerns, Angelo and Lopez arranged for a conference call with Deer Valley and Defendant Robert Searcy, president of Defendant First Financial Brokerage, Inc., of New Jersey. Angelo assured Deer Valley that the down payment was nonrefundable only in the event that Deer Valley failed to go through with the lease arrangement provided for in the Equipment Lease Agreement. *Chapman Aff.* ¶ 16. The individual identifying himself as Searcy on the call represented that First Financial was the source of the money behind the Lease One transaction with Deer Valley. Searcy further represented that he stood ready and willing to execute the necessary documents to release the funds for Lease One to provide the financing as soon as Deer Valley signed the lease agreement and wired the down payment. *Id.*

Deer Valley claims that none of the individuals on the conference call – Angelo, Lopez, nor Searcy – disclosed the nature of the relationship between Lease One and First Financial. Nor did they disclose that Lease One and First Financial were both brokers and did not provide direct financing. *Id.* ¶ 18. Based on the representations Angelo, Lopez,

**MEMORANDUM DECISION AND ORDER - 3**

and Searcy made, Deer Valley believed that (1) Lease One, with First Financial providing the funds, would lease the equipment to Deer Valley in accordance with the terms of the Equipment Lease Agreement, and (2) the money would be available as soon as documents were signed by Deer Valley and the down payment was wired. *Id.* ¶¶ 19, 21. Deer Valley therefore wired the down payment of $344,918.00 and signed the lease agreement and returned it to Lease One.

On December 9, 2011, Deer Valley requested a draw or take town of $488,566.40 against the promised financing to cover the purchase price of the first ten trailers CT Fabrication was prepared to deliver. *Chapmen Aff.* ¶¶ 24-25. However, rather than providing the requested financing, Lopez asked Deer Valley to provide the lender with additional information. *Id.* ¶ 26. According to Deer Valley, this was the first sign that Lease One had misrepresented its ability to provide the financing on the promised terms. *Id.* ¶ 27.

Although Lease One told Deer Valley on several occasions throughout the month of December that the lease documents were forthcoming "very soon," Lease One never came through with the promised financing in December. So, on December 29, Deer Valley informed Lease One that it had been forced to seek out other lending sources because it could not wait for funding from Lease One. *Id.* ¶ 31.

Then, on January 5, 2012, Angelo contacted Deer Valley and again represented that the lease documents were being prepared. *Id.* ¶ 32. Yet, four days later, on January 9, 2012, Lease One still had not produced the lease documents; instead, Lopez emailed to

**MEMORANDUM DECISION AND ORDER - 4**

say that the lender now required tax returns for 2008 and 2009. *Id.* ¶ 33. Lopez explained that. "[t]his looks like the final piece of the puzzle that is missing before documents are released." *January 9 Email,* Dkt. 47-3 at 14. Deer Valley immediately responded that 2010 was its first return based on the date of origination. *Chapman Aff.* ¶ 33. Again, no lease documents were forthcoming. Instead, Lopez emailed on January 12, 2012, requesting year-end financials for 2011, which Deer Valley provided on January 13, 2012. *Id.* ¶ 34.

On January 24, 2012, First Financial produced a new and separate lease proposal to Deer Valley from a company known as Sentry Financial Corporation. *Id.* ¶ 35; *Lease Proposal*, Dkt. 47-3 at 16-17. The lease proposal called for a 60-month term rather than 36 months, required a $35,000 commitment fee, and provided an option to purchase at the end of the term for fair market value. *Lease Proposal*, Dkt. 47-3 at 16-17. Lease One was not a party to this Lease Proposal submitted by Sentry Financial Corporation. *Id.*

Although the terms of the Lease Proposal were different from the original lease agreement provided by Lease One, Deer Valley signed this second lease contract on January 29, 2012, and made a $25,000 deposit. *Angelo Decl.* ¶ 8; *Lease Proposal*, Dkt. 47-3 at 16-17. However, the next week, Deer Valley informed Lease One that it had obtained financing elsewhere and was not going through with the deal with Lease One. *Angelo Decl.* ¶ 11.

Deer Valley maintains that the terms of the new proposal were "substantially less favorable than and entirely inconsistent with the terms originally promised by Lease One,

and [Deer Valley] elected to not obtain financing through Sentry. *Id.* ¶ 36. "Specifically, the total cost to [Deer Valley] of the new proposal was approximately $900,000 greater than the cost under the Agreement, the period of the lease was 60 months rather than 36 months, and the end-of-term options were considerably less favorable than the 10% of cost acquisition price provided for in the Agreement." Lease One never refunded the $344,918.00 down payment.

Deer Valley brought suit against Lease One, Angelo, Lopez, First Financial, and Searcy in Idaho state court. Deer Valley alleged causes of action for (1) racketeering, (2) common law fraud and misrepresentation, (3) breach of contract, (4) breach of the covenant of good faith and fair dealing, (5) unjust enrichment, (6) implied contract/quantum meruit, and (7) conversion. The Lease One defendants – Lease One, Angelo, and Lopez – now seek summary judgment on Deer Valley's claims for racketeering, fraud, unjust enrichment, and quantum meruit.

## ANALYSIS

### 1. Equitable Claims: Unjust Enrichment and Quantum Meruit

In Idaho, a party may recover for unjust enrichment "where a defendant receives a benefit which would be inequitable to retain without compensating the plaintiff to the extent that retention is unjust." *Vanderford Co. v. Knudson,* 165 P.3d 261, 271–72 (Idaho 2007) (citations omitted). There are three elements necessary to establish a prima facie case of unjust enrichment: "(1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the

benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof." *Id.* at 272.

Lease One says that it does not intend to challenge the enforceability of the Equipment Lease Agreement, and because there is an express contract covering the same subject matter, Deer Valley's unjust enrichment claim cannot survive. *Thomas v. Thomas*, 249 P.3d 829, 836 (Idaho 2011). At oral argument, however, Lease One hedged its position somewhat. It clarified that it does not consider the Equipment Lease Agreement to be the final, binding agreement; instead, it claims that the deal was "evolving," and the jury will have look at both the Equipment Lease Agreement and the later Lease Proposal provided by Sentry Financial, as well as the emails between the parties, to determine what the parties intended.

Lease One's clarification about how it regards the Equipment Lease Agreement muddies the question of whether a binding, express contract exists between Deer Valley and Lease One. Given that it appears Lease One does not accept the Equipment Lease Agreement as a final, binding, stand-alone agreement, it is possible that the jury could find that no express agreement existed between Lease One and Deer Valley at all. The Court will therefore allow Deer Valley's unjust enrichment claim to survive as an alternative theory of recovery. If the lease agreement is found unenforceable, Deer Valley should not be foreclosed from recovering for unjust enrichment if the evidence shows "the defendant has received a benefit from the plaintiff that would be inequitable for the

defendant to retain without compensating the plaintiff for the value of the benefit."
*Cannon Builders, Inc. v. Rice*, 888 P.2d 790, 797 (Id. Ct. App. 1995).

For similar reasons, the Court will likewise deny Lease One's motion for summary judgment on Deer Valley's quantum meruit claim. Like unjust enrichment claims (implied-in-law contracts), quantum meruit claims (implied-in-fact contracts) are equitable claims. "An implied-in-fact contract exists where 'there is no express agreement[,] but the conduct of the parties implies an agreement from which an obligation in contract exists.'" *Id.* (citations omitted). Assuming the question of an enforceable contract remains in question, the Court will not dismiss Deer Valley's quantum meruit claim.

## 2. Breach of Covenant of Good Faith and Fair Dealing

In Idaho, the covenant of good faith and fair dealing is violated when "action by either party ... violates, nullifies or significantly impairs any benefit of the ... contract ...." *Metcalf v. Intermountain Gas Co.*, 778 P.2d 744, 749 (1989), *modified by Sorensen v. Comm Tek, Inc.*, 799 P.2d 70 (1990). The covenant requires "that the parties perform in good faith the obligations imposed by their agreement." *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 863 (1991). An objective standard of reasonableness is to be applied in judging whether a party breached the implied covenant. *Jenkins v. Boise Cascade Corp.,* 141 Idaho 233, 108 P.3d 380, 390 (2005) ("[T]he covenant is an objective determination of whether the parties have acted in good faith in terms of enforcing the contractual provisions.").

A jury could conclude in this case that Lease One failed to act reasonably and in good faith in carrying out the contract terms. In the Equipment Lease Agreement, Lease One agreed to lease 100 trailers to Deer Valley for a term of 36 months and with an option to purchase at the conclusion of the terms for 10% of the original purchase price. But the lease proposal Lease One ultimately procured for Deer Valley called for a 60-month term and an option to purchase at full market value. There could also be a question about the reasonableness of Lease One's timing in procuring the financing. According to Deer Valley, Lease One represented on several occasions that the lease documents were essentially ready but then it took Lease One almost three months to obtain the financing it promised once Deer Valley made its sizeable down payment, and Deer Valley had to obtain financing elsewhere. From these facts, a jury could conclude that Lease One violated the covenant of good faith and fair dealing.

3. **Fraud**

Lease One also seeks summary judgment on Deer Valley's fraud claim. A fraud claim requires (1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury. *See Partout v. Harper*, 183 P.3d 771, 776 (Idaho 2008).

Here, Deer Valley claims Lease One induced it to sign the Equipment Lease Agreement and pay the nonrefundable down payment by promising that it could provide

lease financing consistent with terms outlined in the lease agreement, which it knew it could never provide and in fact did not provide. In the Equipment Lease Agreement, Lease One represented that (1) it would serve as the "Lessor" of the equipment, (2) the term would be 36 months, and (3) Deer Valley would have an option to purchase the equipment at 10% of the original purchase price at the end of term. Lease One further represented, according to Deer Valley, that the money would be available as soon as documents were signed by Deer Valley and the down payment was wired to Lease One.

It is undisputed that Lease One did not have financing available for Deer Valley as soon as Deer Valley wired the non-refundable deposit. In fact, Lease One never provided lease financing consistent with the terms outlined in the Equipment Lease Agreement. Instead, Lease One strung Deer Valley along for nearly three months after Deer Valley executed the Equipment Lease Agreement before providing them with a new and separate lease proposal from a different lender. The new lease proposed substantially less favorable terms than those originally promised by Lease One. From these facts, a jury could infer that Lease One promised to provide financing on terms it knew it could never provide and within a time frame in knew it could not meet in order to induce Deer Valley to pay the non-refundable deposit. If true, these allegations would constitute fraud.

As noted above, Lease One maintains that the deal was "evolving," and the parties never intended the Equipment Lease Agreement to be the final, binding document. Or, if they did, their agreement changed as the deal progressed. This may prove true. But at the summary judgment stage, the Court must draw all inferences in Deer Valley's favor as it

**MEMORANDUM DECISION AND ORDER - 10**

is the non-moving party. The Court will therefore deny Lease One's motion for summary judgment on the fraud claim.

**4. Racketeering**

Lease One argues that Deer Valley fails to provide any evidence for its racketeering claim, and Deer Valley responds by requesting more time to conduct discovery on this claim pursuant to Rule 56(d).

Federal Rule of Civil Procedure 56(d) provides that, when facts are unavailable to the nonmoving party, it may be granted additional time to obtain the facts needed to contest the motion for summary judgment. To warrant application of this subsection, the nonmoving party must show by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition. The Court has the following options in ruling on the motion: "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed.R.Civ.P. 56(d).

Deer Valley, however, has had ample time to conduct discovery. This case was removed to this Court in December 2012 – two years ago. A year ago, the Court amended the Case Management Order to extend the discovery and dispositive motion deadlines when defense counsel withdrew. *Order to Amend Case Management Deadlines,* Dkt. 29. The Court *again* extended the deadline for completing discovery on June 27, 2014. Almost two years is more than adequate time to complete discovery in this case.

Deer Valley maintains, however, that Lease One failed to respond to discovery requests. But Deer Valley never contacted Court staff to conduct an informal mediation pursuant to the Case Management Order. Nor did they file motions to compel. If Deer Valley had been diligent in raising the issue of Lease One's failure to respond, the problem could have been remedied. Therefore, the Court will deny Deer Valley's request for an extension of the discovery deadline.

Having found that Deer Valley is not entitled to additional discovery, the Court will dismiss its racketeering claim. Under Idaho's Racketeering Act, "It is unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of the affairs of such enterprise by engaging in a pattern of racketeering activity." I.C. § 18-7804(c). To establish a claim under the Racketeering Act, a party must show: "the existence of an 'enterprise' and a connected 'pattern of racketeering activity.'" *Mannas v. Moss*, 155 P.3d 1166, 1174 (2007).

A "pattern of racketeering activity" means engaging in at least two incidents of racketeering conduct, such as fraud, "that have the same or similar intents, results, accomplices, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated incidents .... " *Eliopulos v. Knox*, 848 P.2d 984, 992 (1992). A single scheme may be sufficient to establish a pattern of racketeering if the plaintiff establishes that the predicate acts themselves amount to, or constitute a threat of, continuing racketeering activity." *Mannos v. Moss*, 936, 155 P.2d 1166, 1175 (2007) (internal quotation).

**MEMORANDUM DECISION AND ORDER - 12**

Deer Valley alleges a pattern of racketeering. Specifically, Deer Valley alleges that Lease One engaged in the interstate transportation of stolen property by "knowingly causing and inducing the wiring of [Deer Valley]'s funds from [Deer Valley]'s bank in Idaho across state lines to Lease One's bank in Massachusetts." *Compl.* ¶ 78. Deer Valley also alleges that Rick Lopez contacted Deer Valley by email and falsely represented that documents were ready for completion contingent upon financial statements. *Id.* ¶ 76(c). Thus, Deer Valley alleges Lease One had no intention of obtaining financing for Deer Valley and instead was attempting to steal Deer Valley's deposit money. While these allegations constitute a single scheme, Deer Valley claims that there is a threat of continuing activity because Lease One used the same lending scheme "perpetrated against" Deer Valley to defraud other companies, including Jimmy's LLC, the Triad Family Limited Partnership, U.S. Environmental Rental Corporation, Oncology Molecular Imaging, LLC, Southwest Wind Energy, LLC, Healthcare of Florence LLC, and Canadian Communications LLC. *Pl's Resp. to Defs' Interrogatories*, Ex. A to Shannahan Decl., Dkt. 44-4.

If proved, these allegations could arguably be sufficient to establish "a pattern of racketeering." The problem is that Deer Valley has no proof that Lease One has used a similar scheme to defraud other companies. Absent any evidence of Lease One defrauding other entities, at best, Deer Valley has alleged a single scheme of fraud without establishing that the alleged "predicate acts amount to, or constitute a threat of,

continuing racketeering activity." Accordingly, the Court will grant summary judgment on this claim.

## ORDER

**IT IS ORDERED that:**

1. Defendants Lease One Corp, Joseph L. Angelo and Rick Lopez's Motion for Partial Summary Judgment (Dkt. 44) is GRANTED with regard to the Plaintiff's racketeering claims and is DENIED in all other respects; and

2. Plaintiff Deer Valley Trucking Inc.'s Motion for Extension of Time to Complete Discovery Pursuant to F.R.C.P. 56(d) (Dkt. 48) is DENIED.

DATED: January 7, 2015

B. Lynn Winmill
Chief Judge
United States District Court